IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL** |
| v. | Case No. 25-mj-356 (JFD) |
| ISABEL LOPEZ | |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Monica Evans, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent of the FBI since 2021. I am currently assigned to criminal investigations related to child exploitation and human trafficking and previously assigned to domestic violent crimes. In my experience as a Special Agent, I have participated in the execution of numerous search and arrest warrants. I have gained experience through training and everyday work related to conducting these types of investigations. I have received training in the areas of violent federal offenses to include carjacking, robbery, violent crimes in a public place and assaults of federal officers. I have also participated in various FBI-mandated and other training for the investigation and enforcement of federal statutes to include kidnapping, trafficking and various other federal offenses. I have participated in investigations of persons suspected of violating violent federal laws, including

conducting searches pursuant to federal search warrants relating to several other cases involving violence towards others. I have also participated in various investigations involving the collection and analysis of electronic evidence. As a Federal Agent, I am authorized to investigate violations of laws of the United States, and to execute warrants issued under the authority of the United States.

2. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that ISABEL LOPEZ (hereinafter, Lopez) has committed the offense of Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1).

3. The facts set forth in this affidavit are based on personal knowledge obtained as result of my direct participation in this investigation and conversations with other law enforcement officers who are familiar with this investigation. Except where otherwise noted, the information set forth in this affidavit has been obtained by me or provided to me, directly or indirectly, by federal law enforcement agents or other law enforcement officers, who have either direct or indirect knowledge concerning the information. Furthermore, wherever information is attributed to law enforcement officers, or to a law enforcement agency as a whole, and wherever the pronoun "we" is used, I learned the information from speaking with other law enforcement officers and

2

employees and/or by reviewing reports, notes, and other records prepared by them. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the contemporaneously filed application, it does not include each and every fact known to me or to other investigators.

## PROBABLE CAUSE

4.   On June 3, 2025, multiple federal agencies, including but not limited to the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), Internal Revenue Service (IRS), and Homeland Security Investigations (HSI), executed search warrants at eight separate Twin Cities metropolitan locations. These search warrants were issued as a part of a large and ongoing criminal investigation into a suspected criminal conspiracy by a drug trafficking organization with ties to one or more transnational criminal organizations. The eight search warrant locations included multiple businesses and multiple residences located in Burnsville, Bloomington, Inver Grove Heights, Lakeville, Minneapolis, and Northfield.

5.   The investigation relating to the June 3 search warrants began during a separate search warrant of a Burnsville, Minnesota storage unit. That search yielded seizure of more than 900 pounds of crystal methamphetamine concealed in multiple tubes separately held in large spools

of metal. Agents estimate that, conservatively, this amount of methamphetamine had a street value of between $22 million and $25 million.



*Recovery of Methamphetamine Concealed in Large Metal Spools*

6. The June 3, 2025, search warrants were authorized by a federal judge on or about May 30, 2025, by way of eight separate under seal grants.[1] The warrants directed law enforcement to search for and seize evidence related to a number of criminal offenses, including the transportation, storage, ordering, purchase and distribution of controlled substances, money laundering, bank fraud, human trafficking, and firearms violations (the "Subject Offenses"), for the period of multiple years until the present.

---

[1] The search warrants were filed under seal and will remain under seal pending indictment, as the underlying investigation is ongoing.

4

7. On June 3, 2025, multiple inter-agency search warrant teams executed search warrants at the various locations. Agents located and seized relevant evidence at each of the at-issue locations. This included but was not limited to large amounts of relevant documents as well as devices containing relevant electronically stored information. Agents also documented and/or seized various items of physical evidence relevant to the Subject Offenses. This included, for example, a set of gold-plated firearms seized from a Northfield residence. Two of the firearms were adorned similarly to others regularly observed to be used by and seized from narco-traffickers.



*Firearms Recovered from a Northfield Warrant Situs on June 3, 2025*

8. Separately, from a Burnsville business location, agents seized documents as well as multiple "Scarface" portraits. Such "homage" images are

5

regularly observed by law enforcement as adornments to the walls of homes and businesses of those involved in the drug and related money laundering trades.



*"Scarface" Portraits Seized from a Burnsville Warrant on June 3, 2025*

## ASSAULTS ON FEDERAL OFFICERS
## OUTSIDE CUATRO MILPAS

9. The eight search warrants were executed on June 3, 2025. Due to, among other things, the nature of the underlying offenses, several of the search warrant execution locations were assessed as high risk and therefore Special Response Teams ("SRT teams"), commonly known as SWAT Teams, and vehicles were present at several search warrant locations. The warrants were executed throughout the morning, beginning at 6:00 a.m. at residences and then progressing to business locations. At approximately 10:06 a.m., federal agents began executing a search warrant at the Cuatro Milpas restaurant, located at 1526 East Lake Street in Minneapolis, Minnesota.

10. Shortly after the warrant execution began, a crowd began to gather around the location. The crowd grew over the next few hours until it numbered approximately 100 people.

11. The crowd appeared to be under the mistaken belief that the gathered law enforcement officers were present to arrest individuals illegally present in the country for immigration offenses. This was incorrect. The agents and officers were in fact present to execute the above-referenced federal search warrant for a long-term investigation into narcotics trafficking, money laundering, human trafficking, and related offenses. Indeed, no one was arrested that day. Agents were there to collect evidence pursuant to a federal search warrant. Recognizing the apparent misunderstanding, law enforcement explained the nature of the search warrant to crowd members.

12. Some people in the crowd were engaged in legal protest activity. Lopez, as detailed below, attempted to obstruct, impede, and assault the federal agents on scene to investigate a drug trafficking organization, in violation of federal law.

13. As the crowd grew in size and agitation, and in response to an increasingly dangerous situation, federal agents called for backup. Additional federal agents arrived on scene. A detective from the Hennepin County Sheriff's Office (HCSO) was initially on scene related to labor trafficking.

Other HCSO sheriff's deputies were initially on scene assisting with perimeter security. HCSO sheriff's deputies returned, with additional personnel, to assist with crowd control after learning of the dangerous situation. Officers from the Minneapolis Police Department (MPD) also arrived on scene to assist federal officers with crowd control and perimeter security. Once MPD officers and HCSO sheriff's deputies arrived on scene, the crowd members' actions were directed not only at the federal officers engaged in the warrant execution, but also at the local police assisting federal officers in maintaining order.

14. Due to the obstruction of and assaults on federal agents, federal agents were forced to depart the scene for safety reasons. This departure occurred before agents could collect all the desired evidence in this large-scale federal narcotics, money laundering, and human trafficking investigation.

15. In the days following the search warrant execution, federal law enforcement undertook an investigation to identify incidents of assaults by crowd members against federal officers and work to identify the individuals who had engaged in these assaults. One such individual that was identified by law enforcement was Lopez.

## LOPEZ ASSAULTS FEDERAL OFFICERS

16. Lopez assaulted multiple federal officers while on the search warrant scene. These assaults were captured on body-worn camera and open-source videos.

17. While on scene, Lopez was wearing a light blue hooded jacket with the hood up, as pictured below.





*Body worn camera footage of Lopez approaching FBI SWAT officers*

9

18.     Lopez was observed approaching FBI SWAT agents who were in the process of securing the perimeter around law enforcement vehicles on the scene.  Lopez approached the group of officers and attempted to hit at least one of the officers with her arms and/or closed fist.  Crowd members saw and moved to restrain Lopez from continuing to assault the officer.  However, as they were doing so, Lopez reached her right leg out and kicked the FBI SWAT officer with her foot.  Lopez was aggressively and actively resisting officers at this time.



*Body worn camera footage of Lopez hitting at an FBI SWAT officer*



*Body worn camera footage of Lopez kicking an FBI SWAT officer*

19. Seconds later, Lopez broke free of the crowd members holding her back and turned toward another FBI SWAT officer. Lopez approached that officer and pushed his body with her arms.





*Body-worn camera footage of Lopez pushing an FBI SWAT officer*

20.  Lopez was observed on body-worn camera approximately 6 minutes later, standing on a trash can in the middle of Lake Street. As noted above, numerous crowd members were using trash cans to obstruct law enforcement vehicles from leaving the area by moving them into the street and/or standing on top of them to prevent the trash cans from being moved.



*Lopez standing on a trash can in the middle of Lake Street*

21.  Several FBI SWAT officers approached Lopez to attempt to get her off the trash can, both for her own safety and to remove the trash can from the

street. Lopez refused to cooperate with officers and slipped and fell onto the trash can. As officers continued to assist her in getting off the trash can, Lopez pushed and kicked at the officers.



*Body-worn camera footage of Lopez being removed from trash can*

22. Lopez was not deterred. Some time later, as federal officers and the local police assisting them were leaving the scene following completion of the warrant, Lopez was observed on video targeting law enforcement officers. This time, Lopez was focusing her efforts on officers who were directing pedestrians away from the vehicle convoy leaving the scene.

13

23.     One of the officers, a Hennepin County Sheriff's Deputy and ATF Task Force Officer, removed a person from out in front of the convoy so the person did not get run over. In response, Lopez, who was walking parallel to the convoy, held a softball or other ball-shaped object in her hand. Lopez threw the softball at officers.



24.     After throwing the softball at the officers, Lopez immediately retrieved it. Lopez threw the softball again, this time at another Sheriff's deputy, who was directing pedestrians away from a moving Bearcat vehicle. Lopez threw the softball directly at the deputy's back.



*Still shots from video showing Lopez throwing the softball at the deputy*

## CONCLUSION

25. Based on the foregoing, I submit there is probable cause to believe that on or about June 3, 2025, Lopez did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, that is, FBI officers and an officer from the Hennepin County Sheriff's Office, where the acts in violation involved physical contact with the victim of that assault or the intent to commit another felony.

26. Thus, there is probable cause to believe that Lopez engaged in Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1). Accordingly, I request a warrant issue for the arrest of Isabel Lopez, that she may be brought before this Court. The foregoing is true to the best of my knowledge and belief.

Further your Affiant sayeth not.

*[signature]*

Special Agent Monica Evans
United States Department of Justice
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on June 9, 2025

*[signature]*

THE HONORABLE JOHN F. DOCHERTY
UNITED STATES MAGISTRATE JUDGE